IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CARLOS WILLIAMS,            :

    Plaintiff,              :

vs.                         :      CIVIL ACTION 06-00076-KD-B

WARDEN JERRY FERRELL, *et al.,* :

    Defendants.             :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants Warden Jerry Ferrell, Assistant Warden Walter Myers, Chaplain Brian Eskelinen, Correctional Officer Supervisor Richard Hetrick, Correctional Officer James Walker, Correctional Lieutenant Robert Gandy, Correctional Officer Carl Wilson, Correctional Lieutenant Steven Lane, and Nurse Jennifer Owens' Motion for Summary Judgment, and supporting materials. (Docs. 30, 31, 38, 43). Additionally before the Court are Plaintiff's responses in opposition to Defendants' motion. (Docs. 39, 45). After careful consideration of these pleadings, and for the reasons set out below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

## I. FACTS AND PROCEEDINGS

Based upon a careful review of the record, the Court summarizes the parties' material allegations.  While incarcerated at Fountain Correctional Facility ("Fountain"), Plaintiff was attacked on February 2, 2006, by a fellow inmate while lying on his bed.  (Doc. 4 at 4).  The record shows that, at approximately 8:25 a.m., Plaintiff became involved in a verbal altercation with another inmate, Steven Benton.  (Doc. 38, att. 9 at 1).  Inmate Benton left the area and returned with a weight lifting bar, which he used to strike Plaintiff across the back.  (Doc. 4 at 4; Doc. 38, att. 9 at 1-3).  After being struck "several times," Plaintiff ran away.  (Doc. 4 at 4).  Correctional Officer Carl Wilson witnessed the attack and yelled for inmate Benton to stop.  (Doc. 38, att. 7 at 2; Doc. 4 at 4).  Officer Wilson approached Benton and ordered Benton to give him the bar, which Benton did.  (Doc. 38, att. 9 at 1).  Officer Wilson then called for assistance.  (Id.).  Both Plaintiff and inmate Benton were taken to the prison health care unit, and inmate Benton was then taken to segregation.  (Doc. 38, att. 9 at 1).

On February 9, 2006, Inmate Benton was charged with violating Disciplinary Rule # 31, assault on another inmate.  (Doc. 38, att. 10 at 1).  A hearing officer, on February 14, 2006,  found inmate Benton guilty of violating Rule 31 and recommended disciplinary

2

segregation for fifteen days and the loss of store, phone, and visitation privileges for thirty days. (Id. at 2). Assistant Warden Myers approved the recommendation on February 22, 2006. (Id.).

On February 10, 2006, Plaintiff filed the present § 1983 action asserting Eighth Amendment claims against Defendants Warden Jerry Ferrell, Assistant Warden Walter Myers, Chaplain Brian Eskelinen, Correctional Officer Supervisor Richard Hetrick, Correctional Officer James Walker, Correctional Lieutenant Robert Gandy, Correctional Officer Carl Wilson, Correctional Lieutenant Steven Lane, and Nurse Jennifer Owens for failing to protect him from the attack by inmate Benton and for failing to provide him proper medical treatment after the attack. (Doc. 4). Plaintiff seeks compensatory and punitive damages. (Doc. 4 at 12).

In their Answers and Special Reports filed on February 8, 2007, February 22, 2007, and October 31, 2007, Defendants deny that they violated Plaintiff's constitutional rights and assert the defenses of absolute and qualified immunity. (Docs. 30, 31, 38, 43). On June 27, 2008, the Court entered an Order converting Defendants' Special Reports and Answers to a Motion for Summary Judgment. (Doc. 44). On April 30, 2007, and July 29, 2008, Plaintiff filed responses in opposition to Defendants' Motion for Summary Judgment. In his responses, he reasserted his Eighth Amendment claims against Defendants. (Docs. 39, 45). Defendants' motion and Plaintiff's

3

responses thereto are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

<u>Fed. R. Civ. P.</u> 56(e); <u>see also</u> <u>Celotex Corp.</u>, 477 U.S. at 325-27.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party. . . .  If the evidence is merely colorable,
. . . or is not significantly probative, . . . summary judgment may
be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50
(1986) (internal citations omitted).  "Summary judgment is mandated
where a party 'fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial.'" <u>Custom</u>
<u>Mfg. & Eng'g, Inc. v. Midway Servs., Inc.</u>, 508 F.3d 641, 647 (11th
Cir. 2007) (citations omitted).

<u>III. DISCUSSION</u>

As discussed above, Plaintiff seeks redress pursuant to 42
U.S.C. § 1983 for alleged constitutional deprivations arising out
of an attack by another inmate.  (Doc. 4).  Specifically, Plaintiff
alleges that Defendants violated his Eighth Amendment rights by
failing to protect him from the attack by inmate Benton and by
failing to provide proper medical treatment following the attack.
Defendants deny that they violated Plaintiff's constitutional
rights and further assert the defenses of absolute and qualified
immunity.[1]  (Docs. 30, 31, 38, 43).

---

[1]In his Complaint, Plaintiff does not specify whether he is
suing Defendants in their official or individual capacities.
Therefore, the Court will consider both.

With the exception of Nurse Lane, all of the Defendants, as
state officials, are entitled to absolute immunity from suit for
damages in their official capacities.  <u>See</u> <u>Harbert Int'l, Inc. v.</u>
<u>James</u>, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued
in their official capacities are protected from suit for damages

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in

---

under the Eleventh Amendment).  Furthermore, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

As a private entity, Nurse Lane is not entitled to immunity, qualified or absolute.  See Swann v. Southern Health Partners, Inc., 388 F.3d 834, 837 (11th Cir. 2004) ("The parties agree that as a private entity, SHP [a private corporation employed by the county to provide medical care to inmates at the county jail] is not entitled to assert a qualified immunity defense."); Hinson v. Edmond, 205 F.3d 1264, 1265 (11th Cir. 2000) (a "privately employed prison physician . . . is ineligible to advance the defense of qualified immunity"); Edwards v. Alabama Dep't of Corrs., 81 F. Supp. 2d 1242, 1254 (M.D. Ala. 2000) (a "private entity" contracting with a state to provide medical services to state inmates "is not entitled to qualified immunity...."); Williams v. Barnes, 2008 WL 2326322, *3 n.2 (S.D. Ala. 2008) ("With respect to absolute immunity, Defendant has cited no case, and the Court is aware of no case, extending absolute immunity to privately employed medical companies or privately employed physicians and nurses providing medical services to state inmates.").

an action at law, suit in equity, or other
proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

The Eighth Amendment provides that "[e]xcessive bail shall not
be required, nor excessive fines imposed, nor cruel and unusual
punishments inflicted." U.S. Const. Amend. VIII. The Eighth
Amendment's proscription against cruel and unusual punishment
prohibits prison officials from exhibiting deliberate indifference
to a substantial risk of serious harm to an inmate. Farmer v.
Brennan, 511 U.S. 825, 828 (1994).

In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S.
189 (1989), the Supreme Court summarized a state's constitutional
responsibilities with regard to inmates:

> [W]hen the State takes a person into its
> custody and holds him there against his will,
> the Constitution imposes upon it a
> corresponding duty to assume some
> responsibility for his safety and general
> well-being. . . . The rationale for this
> principle is simple enough: when the State by
> the affirmative exercise of its power so
> restrains an individual's liberty that it
> renders him unable to care for himself, and at
> the same time fails to provide for his basic
> human needs -- e.g., food, clothing, shelter,
> medical care, and reasonable safety -- it
> transgresses the substantive limits on state
> action set by the Eighth Amendment and the Due
> Process Clause.

DeShaney, 489 U.S. at 199-200 (citations omitted).

In order to prevail on his Eighth Amendment claim, Plaintiff
must prove three elements: "(1) a condition of confinement that

7

inflicted unnecessary pain or suffering, <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, <u>Williams v. Bennett</u>, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1535 (11th Cir. 1993).

In <u>Sims v. Mashburn</u>, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." <u>LaMarca</u>, 995 F.2d at 1535. This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." <u>LaMarca</u>, 995 F.2d at 1535 (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." <u>Sims</u>, 25 F.3d at 983-84 (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)). This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson</u>, 501 U.S. at 297).

In prison condition cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. <u>Id.</u> (citations omitted). In defining "deliberate indifference," the Supreme Court in <u>Farmer</u> stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Farmer</u>, 511 U.S. at 837. The Supreme Court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. <u>Id.</u> at 839-40. There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." <u>Farmer</u>, 511 U.S. at 838. It is not enough that a plaintiff proves that the defendant should have known of the risk, but did not, as actual subjective knowledge is the key. <u>See</u>, <u>e.g.</u>,

Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).

A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." Farmer, 511 U.S. at 844-45 (citations omitted). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id.

Having set forth the general legal principles relevant to Plaintiff's claims, the Court now turns to the application of those legal principles to the facts before the Court.

A.   Failure to Protect.

In his Complaint, Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from the attack by inmate Benton. Plaintiff argues that Defendants should not have allowed inmate Benton, a white supremacist, to have access to a weight lifting bar in the dormitory where Benton and Plaintiff were housed.[2]  (Doc. 4 at 4, 6, 8-9).  The

---

[2] The record reflects that Plaintiff and inmate Benton were housed in the "faith based dormitory," which is occupied by approximately 200 inmates "of many different religions." (Doc. 38, att. 3 at 2). According to Defendants, the entrance criteria requires an inmate to have "four to six months clear ADOC disciplinary record." (Id.). In addition, the entrance

10

evidence shows that, on the morning of the attack, inmate Benton became angry when he walked past Plaintiff's bed, and Plaintiff called him an "F-boy," which Benton construed as a homosexual remark. (Doc. 38, att. 9 at 2, 4-5). Inmate Benton left the area and returned with a weight lifting bar which he used to strike Plaintiff across the back. (Doc. 38, att. 9 at 2).

In order to establish the objective element of an Eighth Amendment claim in a failure to protect case, an inmate must establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 834. It is settled that "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm. . . ." <u>Purcell ex rel. Estate of Morgan v. Toombs County, Ga.</u>, 400 F.3d 1313, 1320 (11th Cir. 2005) ("confinement in a prison where violence and terror reign is actionable."). On the other hand, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment." <u>Purcell</u>, 400 F.3d at 1320 (citations omitted).

---

agreement requires participants to "obey, set and comply with higher standards than the rest of the prison population." (<u>Id.</u>). All participants are required to follow ADOC rules and regulations, and all participants are subjected to disciplinary action if they violate the rules. (<u>Id.</u>). The faith based dormitory has a "zero tolerance" policy for violence. (<u>Id.</u>).

"[A] prison custodian is not the guarantor of a prisoner's safety." Purcell, 400 F.3d at 1321 (citations omitted). "[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. As discussed above, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety." Farmer, 511 U.S. at 844.

In the present case, Plaintiff has not established that he was exposed to "the constant threat of violence" while incarcerated at Fountain, see Purcell, 400 F.3d at 1320, or to any other condition that presented "a substantial risk of serious harm." Farmer, 511 U.S. at 834; see also Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995) ("Hale produced evidence that inmate-on-inmate violence occurred regularly" in the two years preceding the attack).

Plaintiff asserts only that, prior to the incident in question, Defendants discovered "racial slurs" programmed into the computers in the faith based dormitory "by [a] white threat group" who resided in the faith based dormitory. (Doc. 39, att. 1 at 1). Plaintiff concedes that Defendants removed all of the computers from the faith based dormitory and, after an investigation, removed

some of the inmates from the dorm and charged some of the inmates with disciplinary infractions.  (Id.).

Defendants maintain that white supremacy groups and movements are "neither allowed nor tolerated in the faith dorm, or in the facility." (Doc. 38, att. 3 at 2).  Defendant Chaplain Eskelinen stated: "[w]hile the staff cannot police a belief held by an individual, we do our utmost to prevent and stop any group activity of those who hold such views.  There are no religious classes or services that would promote the theology of a white supremacist allowed by the program or the facility."  (Id.).

Assuming the existence of racial conflict at Fountain prior to the attack by inmate Benton, Plaintiff still has not established that conditions at the prison exposed him to "a substantial risk of serious harm."  Farmer, 511 U.S. at 834.  The evidence is undisputed that Benton's attack on Plaintiff was provoked by Plaintiff's use of a homosexual slur directed at Benton. (Doc. 38, att. 9 at 2, 4-5).  There is no evidence that the attack was racially motivated or that it was part of a "constant threat of violence" against Plaintiff by Benton or any other inmate. Accordingly, Plaintiff has failed to satisfy the objective element of his Eighth Amendment claim.

Assuming, *arguendo*, however, that Plaintiff's evidence did satisfy the objective element of his Eighth Amendment claim, he must also show that Defendants were deliberately indifferent to the risk of serious harm to him.  To meet this element, Plaintiff must prove that Defendants actually knew that a substantial risk of serious harm existed, and they "knowingly or recklessly" declined to take action to prevent that harm.  <u>LaMarca</u>, 995 F.2d at 1537.  "[A]n officials's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." <u>Farmer</u>, 511 U.S. at 838.  "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" <u>Hale</u>, 50 F.3d at 1583 (quoting <u>Farmer</u>, 511 U.S. at 842).  "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" <u>Id.</u> (quoting <u>Farmer</u>, 511 U.S. at 842).

In this case, Plaintiff alleges that, on the morning of February 2, 2006, he was lying on his bed when inmate Benton attacked him with a weight lifting bar.  (Doc. 4 at 4).

Plaintiff alleges that Correctional Officer Wilson saw inmate Benton run by with the bar, and Officer Wilson yelled for Benton to stop and called for assistance. (Id.). The record shows that Officer Wilson immediately confronted Benton and ordered Benton to give him the bar, which Benton did. (Doc. 38, att. 7 at 2; Doc. 38, att. 9 at 1). The situation was quickly resolved, and both inmates were taken to the prison health care unit for medical assessment. (Id.).

Plaintiff has failed to present any evidence that Defendant Wilson or any other Defendant was deliberately indifferent to the risk of harm to Plaintiff from inmate Benton. There is no evidence that any Defendant, or Plaintiff himself, knew that he was at risk of being attacked by inmate Benton or any other inmate. There is no evidence that any threats had ever been made by Benton or any other inmate against Plaintiff and made known to these Defendants, nor is there any evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." Farmer, 511 U.S. at 842 (internal quotation marks omitted). As discussed above, there is no evidence that inmate Benton's attack was racially motivated or part of a white supremacy plan or scheme. Rather, the evidence indicates that Benton's attack was sudden

15

and isolated, arising out of a verbal altercation that occurred moments earlier between Benton and Plaintiff, and that no one, including Plaintiff, had any warning or reason to suspect that he was in danger of being attacked.

Because Plaintiff has failed to show that Defendants actually knew that a substantial risk of serious harm existed, *i.e.*, that Plaintiff was at risk of being harmed by another inmate, and that they knowingly or recklessly declined to take action to prevent that harm, he has failed to satisfy the subjective element of his Eighth Amendment claim as well. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment failure to protect claim.

B.   <u>Failure to Provide Proper Medical Treatment</u>.

Next, Plaintiff claims that Defendants violated his rights under the Eighth Amendment by failing to provide proper medical treatment to him after he was attacked by inmate Benton. According to Plaintiff, after inmate Benton struck him with the weight lifting bar "several times," he was taken to the prison health care unit, and the nurse examined him and put a bandage on his back. (Doc. 4 at 4-5). Plaintiff alleges that Defendants were deliberately indifferent in

16

failing to take an x-ray immediately following the incident "to determine whether or not [he] had any internal damage done to his rib cage." (Doc. 4 at 5-6).

A review of Plaintiff's medical records shows that he was treated in the prison health care unit twice on February 2, 2006, once immediately following the incident and again that night after complaining of pain in his back. The records reflect that immediately following the attack, Plaintiff presented to the health care unit in "good condition," with small abrasions to his left knee and elbow and his right lower back. (Doc. 30, att. 1 at 27). The nurse cleaned the abrasions and applied a bandage. (Id.). That evening, Plaintiff presented to the health care unit with complaints of pain in his back and rib area. (Id. at 24-25). At that time, the nurse noted a bruise on the right side of his back, with no bleeding or excessive swelling. (Doc. 30, att. 1 at 24). Plaintiff was given a warm compress and Motrin 400 for pain and was instructed to return if his condition worsened. (Id. at 24-25). The very next day, Plaintiff was seen by Dr. Robert Barnes, who noted a contusion across the right posterior ribs. (Doc. 30, att. 1 at 16). Dr. Barnes continued Plaintiff's pain medication, prescribed a "universal

rib belt," and requested x-rays of Plaintiff's rib area and chest.  (<u>Id.</u>; Doc. 30, att. 2 at 9, 70).  The x-rays, which were taken on February 8, 2006, showed "no evidence of fracture or other significant bony abnormality" from the attack by inmate Benton.[3]  (Doc. 30, att. 2 at 9).

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  <u>Id.</u> (quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)).  "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." <u>Id.</u> (internal quotation marks and citation

---

[3] Plaintiff's medical records also reflect a history of back problems related to a disc herniation for which Plaintiff received extensive treatment both before and after the attack. That treatment is not at issue here.

omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must further demonstrate "deliberate indifference" to a serious medical need. <u>Farrow</u>, 320 F.3d at 1243.

> In <u>Estelle</u>, the Supreme Court established that "deliberate indifference" entails more than mere negligence. <u>Estelle</u>, 429 U.S. at 106, 97 S. Ct. 285; <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in <u>Farmer</u> by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In interpreting <u>Farmer</u> and <u>Estelle</u>, this Court explained in <u>McElligott</u> that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

<u>Farrow</u>, 320 F.3d at 1245-46.

In addition, where a plaintiff complains of delay in medical treatment, he has the burden of establishing that he suffered a significant effect from the delay. <u>See Hill</u>, 40 F.3d at 1188. "An

inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." Id. (emphasis added).

In this case, Plaintiff was immediately taken to the prison health care unit following his altercation with inmate Benton. At that time, he was treated for minor abrasions and told to return if his condition worsened. That evening, Plaintiff complained of pain in his back, and he was given pain medication and a warm compress. The very next day, Plaintiff was examined by the prison physician who continued his pain medication, gave him a rib belt, and ordered x-rays. The x-rays, which were taken six days after the incident, revealed no fractures or other abnormalities.

Against this backdrop of facts, Plaintiff has failed to show that Defendants knew of and disregarded an "objectively serious medical need" following Plaintiff's altercation with inmate Benton. To the contrary, the evidence reflects that Defendants responded to every medical need presented, and that Plaintiff suffered no detrimental effect whatsoever from any delay in taking x-rays of his back. Because Plaintiff has failed to establish both the objective and subjective elements of his Eighth Amendment medical care claim, Defendants are entitled to judgment as a matter of law.

C.    <u>No Supervisory Liability</u>.

In addition to the foregoing, in his Complaint, Plaintiff alleges that Defendants Warden Jerry Ferrell, Assistant Warden Walter Myers, Correctional Lieutenant Robert Gandy, Correctional Officer Supervisor Richard Hetrick, and Chaplain Brian Eskelinen are liable for violations of his Eighth Amendment rights based on their supervisory positions at the prison. (Doc. 4 at 6-9). The law is clear, however, that a supervisor may not be held liable in a § 1983 action based solely on the acts of his employee. <u>See Fundiller v. City of Cooper City</u>, 777 F.2d 1436, 1443 (11th Cir. 1985) (comparing the position of a supervisor to a municipality which may have liability imposed through its customs or policies, but not through employees' actions). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003).

"The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" <u>Id.</u> (citations omitted). "Alternatively, the causal connection may be established when a supervisor's 'custom or policy

. . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" Id. (citations and internal quotation marks omitted). In addition, a causal connection may be established by proving that a supervisory defendant breached a duty imposed by state or local law, and this breach caused Plaintiff's constitutional injury. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

Because Plaintiff has failed to establish an affirmative causal connection between these Defendants' actions, orders, customs, policies, or breaches of statutory duty and a deprivation of Plaintiff's constitutional rights, Defendants Ferrell, Myers, Gandy, Hetrick, and Eskelinen are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claims for this reason as well.

IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants, Warden Jerry Ferrell, Assistant Warden Walter Myers, Chaplain Brian Eskelinen, Correctional Officer Supervisor Richard Hetrick, Correctional Officer James Walker, Correctional Lieutenant Robert Gandy, Correctional Officer Carl Wilson, Correctional Lieutenant Steven Lane, and Nurse Jennifer Owens are entitled to summary judgment in their favor on all claims asserted against them by

22

Plaintiff.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be GRANTED, that this action be DISMISSED with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

The attached sheet contains important information regarding objections to this recommendation.

DONE this **19**[th] day of **November, 2008**.


_____**/S/ SONJA F. BIVINS**_____
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   <u>Objection</u>.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.